IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HEIDI M. FITZER,                              )
                                              )        2:05-cv-507-GEB-GGH
                    Plaintiff,                )
                                              )
          v.                                  )        ORDER*
                                              )
CHEVRON CORPORATION, and                      )
ARLENE GAONA,                                 )
                                              )
                    Defendants.               )
                                              )

       Defendants move for summary judgment or summary adjudication of Plaintiff's claims.  Plaintiff does not oppose granting summary judgment on her retaliation claim, and indicates she does not oppose granting summary judgment on her discrimination claim. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 1; Pl.'s Proposed Order at 1-2.)  Plaintiff otherwise opposes the motion.

BACKGROUND

       Plaintiff Heidi Fitzer, a Caucasian female, is a former employee of Defendant Chevron Corporation ("Chevron").  In March 2004, Defendant Chevron hired Plaintiff to work as a customer service representative at a gas station on Nut Tree Parkway in Vacaville,

_____

     * This motion was determined to be suitable for decision without oral argument.  L.R. 78-230(h).

1

1  California ("Nut Tree gas station").  (Pl's Resp. to Defs.' Statement
2  of Undisputed Facts ("SUF") ¶ 8; Fitzer Depo. 50:1-51:5.)  During her
3  first week on the job, Plaintiff received off-site training in
4  Sacramento, California.  (SUF ¶ 10; Fitzer Depo. 52:2-9.)  The
5  following week, Plaintiff worked at the Nut Tree gas station under the
6  supervision of manager Buck Buchanan ("Buchanan"), a Caucasian male,
7  and assistant manager Defendant Arlene Gaona ("Gaona"), a Hispanic
8  female.  (SUF ¶¶ 8, 11; Fitzer Depo. 55:2-8.)  During that week,
9  Defendant Gaona criticized Plaintiff's work performance, "slam[med]
10 things around," and hurt her feelings.  (SUF ¶¶ 12; Fitzer Depo. 58:1-
11 59:12.)  At the end of the week, Plaintiff quit her job.  (SUF ¶ 14;
12 Fitzer Depo. 59:16-61:12.)

13        In late September 2004, Plaintiff approached Buchanan and
14 asked if she could return to work at the Nut Tree gas station.  (SUF
15 ¶ 15; Fitzer Depo. 85:3-87:17.)  Buchanan agreed, and Plaintiff
16 resumed work at the gas station under the supervision of Defendant
17 Gaona.  (SUF ¶ 15; Fitzer Depo. 334:22-24.)  Plaintiff and Defendant
18 Gaona usually worked at different times: Defendant Gaona worked the
19 morning shift, while Plaintiff worked the afternoon shift.  (SUF ¶ 16;
20 Brooks Depo. 23:12-17.)  During shift overlaps, Plaintiff asserts
21 Defendant Gaona spoke to her in a rude tone, yelled at her about her
22 work performance, "slamm[ed] stuff around," asked her to perform
23 certain job tasks, requested she re-do tasks she had already
24 completed, or "picked" on her about the manner in which she counted
25 money and cigarettes.  (Pl.'s Statement of Disputed Facts ("SDF") ¶ 1;
26 Fitzer Depo. 81-83, 91:1-14, 90:4-10, 145:1-146:25, 188:18-189:19.)
27 Plaintiff states that when this conduct occurred, she "blew it off and
28 just continued working."  (SUF ¶ 16; Fitzer Depo. 81:1-10.)  On

1   December 16, 2004, Plaintiff asserts Defendant Gaona called her a
2   "white witch," and "white and stupid."  (SUF ¶ 21; SDF ¶ 1; Fitzer
3   Depo. 194:2-24, 209:1-5, 258:8-20.)  On December 19, 2004, Plaintiff
4   asserts Defendant Gaona called her a "bitch," "white bitch," and
5   "blonde bitch."  (SUF ¶ 23; SDF ¶¶ 1, 4; Fitzer Depo. 107:23-108:2,
6   115:16, 233:19-22.)

7        Plaintiff asserts other co-workers "picked on her," caused
8   fights, used profanity towards her, and assigned her job tasks.  (SDF
9   ¶ 1; Fitzer Depo. 91:13-107:18.)  Plaintiff asserts she complained to
10  Buchanan about the conduct of Defendant Gaona and her co-workers, but
11  nothing was done in response to her complaints.  (SDF ¶ 3; Fitzer
12  Depo. 83:2-84:10, 100:1-20.)  In December 2004 or January 2005,
13  Plaintiff asserts Buchanan told her that he would take care of her
14  problems only "if she spread her legs."  (Pl.'s Opp'n at 2; Fitzer
15  Depo. 502:17-505:23.)  Plaintiff also asserts "there was additional
16  sexual harassment by . . . Buchanan."  (Pl.'s Opp'n at 3, n. 2.)

17       In the beginning of January 2005, Plaintiff missed several
18  days of work, and by January 24, 2005, her absence from work was
19  continuous.  (SUF ¶ 44; Alm Depo. 98:6-23.)  Plaintiff submitted
20  doctor notes for her absences, but did not advise Chevron when she
21  would return to work.  (SUF ¶ 47; SDF ¶ 2; Fitzer Depo. 127:1-128:16,
22  525:7-10.)  After two months passed, Defendant Chevron notified
23  Plaintiff in a letter that her employment was terminated effective
24  March 21, 2005, because of her continued absence.  (SUF ¶¶ 46, 48-49;
25  Alm Depo. 99:10-100:11; Defs.' Ex. O.)  Plaintiff believes her
26  employment was terminated for the reasons stated in the letter.  (SUF
27  ¶ 50; Fitzer Depo. 541:13-17.)

28

1          Plaintiff has brought this action against Defendant Chevron
2    and Defendant Gaona as a result of the events that occurred from
3    September 2004 through March 2005.[1]  (Pl.'s Opp'n at 1.)  Plaintiff
4    asserts claims under Title VII, 42 U.S.C. § 2000e et seq., for
5    harassment and discrimination based on her gender and race,
6    constructive discharge, and retaliation.[2]  In addition, Plaintiff
7    asserts state law claims for harassment, failure to prevent
8    harassment, discrimination, retaliation, wrongful termination in
9    violation of public policy, and intentional infliction of emotional
10   distress.

11                          DISCUSSION[3]

12   I.   Title VII Claims

13        A.   Administrative Charge Requirement

14          Defendants argue Plaintiff should not be able to offer
15   evidence that she was harassed or discriminated against by Buchanan or
16   co-workers in support of her Title VII claims because she did not
17   include these allegations in her charge of discrimination
18   ("administrative charge") presented to the Equal Employment

19

20          [1]   Defendants argue Plaintiff's constructive discharge claim
21   is based on events that occurred during March 2004.  (Defs.' Mot.
     at 31-33.)  However, Plaintiff indicates her constructive discharge
22   claim is based on the events that occurred from September 2004
     through March 2005.  (Pl.'s  Opp'n at 1, 4.)
23
            [2]   Although Defendants contend Plaintiff asserts claims for
24   discrimination and harassment based on her Native American national
     origin, no such claims appear in Plaintiff's First Amended
25   Complaint.  In her Opposition, Plaintiff states she asserts claims
     only for discrimination and harassment because of race and gender.
26   (Pl.'s Opp'n at 1-2.)  Accordingly, the discussion section only
27   addresses race and gender discrimination and harassment claims.

28          [3]   The standards applicable to motions for summary judgment
     are well known and need not be repeated here.

                                  4

1 Opportunity Commission.  (Defs.' Mot. at 8, 11.)  Plaintiff
2 acknowledges she cannot assert new harassment claims, and then asserts
3 an argument that pertains to one of her state claims.  (Pl.'s Opp'n
4 at 5.)

5         A plaintiff must file an administrative charge before
6 commencing a civil suit alleging Title VII claims.  Brown v. Puget
7 Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th
8 Cir. 1984).  New incidents of discrimination under Title VII that were
9 not included in the administrative charge are not actionable unless
10 the incidents "are like or reasonably related to the allegations
11 contained in the [administrative] charge."  Lyons v. Edwards, 307 F.3d
12 at 1104; Oubichon v. Northern Am. Rockwell Corp., 482 F.2d 569, 571
13 (9th Cir. 1973).  This standard is satisfied if the incidents "fell
14 within the scope of the actual [administrative] investigation or an
15 [administrative] investigation which can reasonably be expected to
16 grow out of a charge of discrimination," or when the incidents "are
17 consistent with the plaintiff's original theory of the case."  Lyons,
18 307 F.3d at 1104.  However, new incidents of discrimination "are not
19 alike or reasonably related" to allegations in the administrative
20 charge if they do not "describe the same conduct and implicate the
21 same individuals."  Cheek v. Western and Southern Life Ins. Co., 31
22 F.3d 497, 501 (7th Cir. 1994); see Freedman v. Oakland Unified School
23 Dist., 291 F.3d 632, 636 (9th Cir. 2002) ("it is appropriate to
24 consider such factors as . . . [the] perpetrators of discrimination
25 named in the charge").

26         When examining an administrative charge, the court must
27 construe the allegations "with utmost liberality since they are made
28 by those unschooled in the technicalities of formal pleading."  Lyons,

1  307 F.3d at 1104; <u>B.B.K. v. Maui Police Dept.</u>, 276 F.3d 1091, 1100

2  (9th Cir. 2002).  Plaintiff alleges in her administrative charge that

3  she was harassed by Defendant Gaona, but does not indicate she was

4  harassed by any other individual.[4]  (<u>See</u> Pl.'s First Am. Compl.

5  Ex. 1.)  Consequently, nothing in Plaintiff's administrative charge

6  indicated an administrative investigation should focus on harassment

7  by anyone other than Defendant Gaona.  <u>See</u> <u>Freedman</u>, 291 F.3d at 637

8  (stating "nothing in [the plaintiff's] charge would have indicated

9  that an investigation should focus on anything more than the

10 allegations of discrimination by . . . particular individuals").

11 Therefore, the allegations of harassment against Gaona are not like or

12 reasonably related to allegations of harassment against Buchanan and

13 co-workers because they do not "describe the same conduct and

14 implicate the same individuals," <u>Cheek</u>, 31 F.3d at 501, or set forth

15

16 ───────────────

17        [4]     The relevant portion of Plaintiff's administrative charge
   states:

18      [O]n March 10, 2004, I was rehired [by Defendant Chevron]
19      as a Cashier. A new Assistant Manager, Arlene (Hispanic
        female) was working there. I went to training for a
20      week.  Then for the next two weeks she harassed me by
        yelling at me, and by being mean to me.  The work
21      atmosphere was so hostile, that I was constructively
        discharged on about March 17, 2004.  Then on September
22      30, 2004, Station Manager, Buck Buchanan, rehired me and
        promised that I would not be harassed again.
23      Nevertheless, Arlene was still there, and she began to
        harass me again.  For instance, on December 16, 2004, she
24      subjected me to a racial epithet.  On December 19, 2004,
        she called me a "bitch" and a "blonde bitch" in front of
25      a customer.  She has again made my work atmosphere
        extremely hostile.  I complained to Buck on December 19,
26      2004, and to Human Resources on December 22, 2004, but
        nothing has been done to stop the discriminatory hostile
27      work environment.

28
   (Pl.'s First Am. Compl. Ex. 1.)

1   the same "theory of the case," <u>Lyons</u>, 307 F.3d at 1104.  Therefore,

2   the court cannot consider evidence of harassment by Buchanan or co-

3   workers in connection with Plaintiff's Title VII claims.

4                     <u>B.  Harassment Claims</u>

5         Defendants seek summary judgment on Plaintiff's sexual and

6   racial harassment claims brought under Title VII, 42 U.S.C. § 2000e-

7   2(a).  (Defs.' Mot. at 11.)  To establish a harassment claim under

8   Title VII, a plaintiff must show she was harassed "because of" her

9   gender or race.  <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S.

10   75, 80-81 (1998).  In addition, a plaintiff must demonstrate the

11   harassment was "so severe or pervasive as to 'alter the conditions of

12   [her] employment and create an abusive working environment.'"  <u>Clark</u>

13   <u>County</u>, 532 U.S. at 270 (quoting <u>Meritor Savings Bank, FSB v. Vinson</u>,

14   477 U.S. 57, 67 (1986)); <u>Vasquez v. County of Los Angeles</u>, 349 F.3d

15   634, 642 (9th Cir. 2004).

16                i.  <u>"Because of" Gender or Race</u>

17         Defendants argue Plaintiff cannot establish she was harassed

18   "because of" gender or race.  (Defs.' Mot. at 16.)  Plaintiff argues

19   she was harassed based on her gender and race because she was

20   "assigned duties not given to non-Caucasian females."  (SUF ¶ 4;

21   Fitzer Depo. 193:7-23; Defs.' Ex. C.)  In addition, Plaintiff asserts

22   she was harassed based on her gender because Defendant Gaona called

23   her a "bitch," and she was harassed based on her race because

24   Defendant Gaona called her a "white witch," "white bitch," "blonde

25   bitch," and "white and stupid."  (Pl.'s Opp'n at 1-2.)

26         A female plaintiff can establish she was harassed "because

27   of" her gender by offering "direct comparative evidence" as to how the

28   alleged harasser treated male employees.  <u>Oncale</u>, 523 U.S. at 80-81;

EEOC v. Nat'l Education Assoc. Ala., 422 F.3d 840, 844-45 (9th Cir. 2005).  Plaintiff does not assert that she was treated differently than male employees at the Nut Tree gas station, but only that she was treated differently than other female employees. (SUF ¶ 4; Fitzer Depo. 193:7-23; Defs.' Ex. C.)  Therefore, Plaintiff cannot establish she was harassed "because of" her gender through the use of comparative evidence.

A female plaintiff can also establish she was harassed "because of" her gender if she was "harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser [was] motivated by general hostility to the presence of women in the workplace." Oncale, 523 U.S. at 80.  Although the word "bitch" has a sexual connotation, it is not such a sex-specific and derogatory term as to make it automatically clear Defendant Gaona harassed Plaintiff "because of" her gender. Galloway v. General Motors Service Parts Operations, 78 F.3d 1164, 1168 (7th Cir. 1996), overruled in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)(stating the use of the word "bitch" does not make it "automatically clear" that the harassment "was motivated by gender rather than by a personal dislike unrelated to gender"); Kriss v. Sprint Communications Co., 58 F.3d 1276, 1281 (8th Cir. 1995) (stating the word "bitch" is not "an indication of a general misogynist attitude," and is not "particularly probative of gender discrimination").

Plaintiff has not presented any other evidence demonstrating she was harassed "because of" her gender.  Therefore, Defendant's motion for summary judgment on Plaintiff's Title VII gender harassment claim is granted.  Compare Hocevar v. Purdue Frederick Co., 223 F.3d

721, 737 (8th Cir. 2000) (no genuine issue of material fact as to whether the plaintiff was harassed because of her gender where the plaintiff only presented evidence she was called a "bitch"), with Costa v. Desert Palace, Inc., 299 F.3d 838, 862 (9th Cir. 2002) (genuine issue of material fact as to whether the plaintiff was harassed because of her gender where the plaintiff was called a "bitch" and she presented evidence of other differential treatment).

Plaintiff could establish she was harassed "because of" her race by presenting "direct comparative evidence" as to how the alleged harsser treated members of a different race.  See Oncale, 523 U.S. at 80-81.  Although Plaintiff alleges she was "assigned duties not given to non-Caucasian[s]," she does not dispute that with the exception of her supervisor, Defendant Gaona, all of the employees at the Nut Tree gas station were Caucasian.  (SUF ¶ 4; Alm Depo. 35:12-36:4.) Consequently, Plaintiff could not have been treated differently than similarly-situated employees of a different race because no such employees worked at the Nut Tree gas station.  Therefore, Plaintiff cannot establish she was harassed "because of" her race through the use of comparative evidence.

Plaintiff could also establish she was harassed "because of" her Caucasian race if she was harassed in such race-specific and derogatory terms as to make it clear that the harasser was motivated by general hostility to the presence of Caucasian persons in the workplace.  See Oncale, 523 U.S. at 80.  The phrases "white and stupid," "white witch," and "white bitch" are "explicitly racial" and "carr[y] clear racial overtones."  See Bowen v. Missouri Department of Social Services, 311 F.3d 878, 884 (8th Cir. 2002) (holding "two 'white bitch' epithets" were "explicitly racial" and "carried clear

1  racial overtones"). Consequently, the use of these phrases permit an

2  inference "that racial animus motivated not only [Defendant Gaona's]

3  overtly discriminatory conduct, but all of her offensive conduct

4  towards [Plaintiff]."[5]  Id.  Therefore, a genuine issue of material

5  fact exists as to whether Plaintiff was harassed "because of" her

6  race.

7                    ii.  Hostile or Abusive Work Environment

8              Defendants argue Plaintiff cannot establish she was

9  subjected to a sufficiently hostile or abusive work environment

10 because Defendant Gaona's conduct was not objectionable or frequent,

11 and did not interfere with Plaintiff's employment. (Defs.' Mot.

12 at 13.)  Plaintiff argues she was subjected to a hostile or abusive

13 work environment because Defendant Gaona yelled at her, nitpicked,

14 assigned her certain work duties, applied different rules and

15 standards to her, and subjected her to racial slurs. (Pl.'s Opp'n at

16 3.)  Plaintiff also cites to deposition testimony in which she states

17 Defendant Gaona spoke to her in a rude tone of voice, "slammed stuff,"

18 and requested she re-do work that had already been completed. (See

19 SDF ¶ 1.)

20             "[W]hether [the work] environment is sufficiently hostile or

21 abusive must be judged 'by looking at all the circumstances,'

22 including the 'frequency of the discriminatory conduct; its severity;

23 whether it is physically threatening or humiliating, or a mere

24 offensive utterance; and whether it unreasonably interferes with an

25 employee's work performance.'"  Clark County, 532 U.S. at 270 (quoting

26

27 _____

        [5]      Accordingly, the Court need not determine whether "blonde
28 bitch" constitutes a racial slur. (See Defs.' Mot. at 15-16; Pl.'s
   Opp'n at 2-3; Defs.' Reply at 8-9.)

1  Faragher v. Boca Raton, 524 U.S. 775, 777-78 (1998)).  In addition,
2  the working environment must have been "both objectively and
3  subjectively offensive, one that a reasonable person would find
4  hostile or abusive, and one that [Plaintiff] in fact did perceive to
5  be so."  Faragher, 524 U.S. at 777.

6      Plaintiff argues the conduct at issue was frequent because
7  it occurred "on a daily basis, during shift overlaps."  (Pl.'s Opp'n
8  at 3; SDF ¶ 1.)  However, Plaintiff does not provide any specific
9  facts regarding the frequency of the conduct in support of her
10 allegations.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986)
11 ("The party opposing summary judgment may not rest on conclusory
12 allegations, but must set forth specific facts showing that there is a
13 genuine issue for trial."); F.T.C. v. Publishing Clearing House, 104
14 F.3d 1168, 1171 (9th Cir. 1997) ("conclusory, self-serving statements
15 . . . are insufficient to create a genuine issue of material fact").
16 Consequently, although "the alleged number of . . . incidents is
17 greater than one, . . . [the conduct] cannot be said to constitute a
18 pervasive pattern."  Rodgers v. Western-Southern Life Ins., 12 F.3d
19 668, 674 (7th Cir. 1993).

20      Plaintiff argues the conduct at issue was severe because
21 Defendant Gaona used racial slurs on two separate occasions.  (Pl.'s
22 Opp'n at 3.)  However, the "mere utterance of an epithet which
23 engenders offensive feelings in an employee" does not create an
24 objectively hostile or abusive work environment.  Harris v. Forklift
25 Systems, Inc., 510 U.S. 17, 21 (1993); Vasquez, 349 F.3d 634 (no
26 hostile or abusive work environment created when supervisor used two
27 "racially-related epithets").  Plaintiff also argues the other conduct
28 at issue, which primarily includes complaints of rude behavior, unfair

treatment, and criticisms of her work performance, was severe enough
to create a hostile work environment.  (Pl.'s Opp'n at 3.)  However,
"conduct must be extreme" to create an objectively hostile work
environment because "the ordinary tribulations of the workplace" are
not proscribed.  Faragher, 524 U.S. at 788 (stating that "the
standards for judging hostility are sufficiently demanding to ensure
Title VII does not become a general civility code").

        Plaintiff argues the conduct at issue unreasonably
interfered with her work performance because she "developed severe
gastritis as a result of the harassment."  (Pl.'s Opp'n at 2.)
However, Plaintiff's treating physician testified he never diagnosed
Plaintiff with gastritis.  (Dr. Sidhu Depo. 20:10-12.)  Therefore,
Plaintiff's self-diagnosis is "supported solely by [her] own
self-serving testimony . . . and [is] undermined . . . by other
credible evidence."  Leslie v. Grupo ICA, 198 F.3d 1152, 1157 (9th
Cir. 1999); Villiarimo v. Aloha Island Air, 281 F.3d 1054, 1061 (9th
Cir. 2002) (no genuine issue of material fact exists where the only
evidence presented is "uncorroborated and self-serving" testimony).
Furthermore, other undisputed evidence suggests Defendant Gaona's
conduct did not interfere with Plaintiff's work performance: Plaintiff
and Defendant Gaona rarely worked together, only interacted during
shift overlaps, and when Plaintiff had a problem with Defendant Gaona,
she "blew it off and just continued working."  (See SUF ¶¶ 16-17.)

        Therefore, the conduct at issue did not create an
objectively hostile or abusive work environment because it was not
frequent or severe, and did not unreasonably interfere with
Plaintiff's work performance.  See Vasquez, 349 F.3d at 638, 643-44
(no hostile or abusive work environment where the supervisor yelled at

the plaintiff, made negative comments about him in front of other people, wrote false complaints about his work, treated him unfairly, and subjected him to two "racially related epithets").  Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII racial harassment claim is granted because no genuine issue of material fact exists as to whether Plaintiff was subjected to a racially hostile or abusive work environment.

### C. Constructive Discharge

Defendants seek summary judgment on Plaintiff's claim for constructive discharge brought under Title VII, 42 U.S.C. § 2000e. (Defs.' Mot. at 29-30.)  To establish a prima facie case of constructive discharge, a plaintiff must show (1) she was subjected to a hostile work environment, and (2) her working conditions were so intolerable that a reasonable person would have felt compelled to resign.  Penn. State Police v. Suders, 542 U.S. 129, 146-147 (2004) (emphasizing that a constructive discharge claim requires more than a showing of a hostile work environment).  Plaintiff cannot establish a prima facie case of constructive discharge because, as discussed supra, Plaintiff has not established she was subjected to a hostile work environment. (See Discussion Part II, B.)  Therefore, Defendants' motion for summary judgment on Plaintiff's constructive discharge claim is granted.

### D.  Discrimination Claim

Defendants seek summary judgment on Plaintiff's race and gender discrimination claims under Title VII, 42 U.S.C. § 2000e-2(a). (Defs.' Mot. at 16-21.)  It appears Plaintiff concedes her discrimination claims because Plaintiff states she "limits her discrimination allegations to the harassment claim," and proposes her

1 | "discrimination claim [be] limited to evidentiary support of her
2 | harassment claim." (Pl.'s Proposed Order at 1-2.) Nevertheless, her
3 | discrimination claims are addressed in the event Plaintiff did not
4 | intend to concede these claims.

5 | Title VII prohibits an employer from discriminating against
6 | an employee with respect to compensation, terms, conditions, or
7 | privileges of employment. 42 U.S.C. § 2000e-2(a)(1). To prevail on a
8 | Title VII discrimination claim, a plaintiff must first establish a
9 | prima facie case of discrimination. Vasquez, 349 F.3d at 640. A
10 | plaintiff may establish a prima facie case either with direct or
11 | circumstantial evidence of discriminatory intent, or by showing (1)
12 | she belongs to a protected class, (2) she was performing according to
13 | her employer's legitimate expectations, (3) she suffered an adverse
14 | employment action, and (4) other employees with qualifications similar
15 | to her own were treated more favorably. Id. at 640, n.5. Once the
16 | plaintiff establishes a prima facie case, "the burden shifts to the
17 | defendant to articulate a legitimate, nondiscriminatory reason for the
18 | allegedly discriminatory conduct." Id. at 640. "If the defendant
19 | provides such a reason, the burden shifts back to the plaintiff to
20 | show that the . . . reason is a pretext for discrimination." Id.

21 | Defendants argue Plaintiff cannot establish a prima facie
22 | case of discrimination because Plaintiff did not suffer an adverse
23 | employment action. (Defs.' Opp'n at 17.) Plaintiff indicates she
24 | suffered an adverse employment action because she "was not protected
25 | from harassment." (Defs.' Ex. C; Fitzer Depo. 193:7-23.) However, a
26 | failure to be protected from harassment cannot serve as the basis for
27 | an adverse employment action because, as discussed supra, Plaintiff
28 | cannot establish a prima facie case of harassment. Trujillo v. North

14

County Transit Dist., 63 Cal. App. 4th 280, 289 (1998) (a plaintiff cannot show she was not protected from harassment unless she first establishes the "essential foundational predicate" that she was harassed); see Tritchler v. County of Lake, 358 F.3d 1150, 1155 (9th 2004) ("a finding of discrimination is required before a failure to investigate a discrimination complaint would become actionable"). Plaintiff also indicates she suffered an adverse employment action because she was "made to do other females' jobs," and was "assigned job duties not given to non-Caucasian females." (SUF ¶¶ 3-4.) Disadvantageous work assignments can constitute an adverse employment action.  Wyatt v. Boston, 35 F.3d 13, 15-16 (1st Cir. 1994). Therefore, Plaintiff has established she suffered an adverse employment action.

      Assuming arguendo Plaintiff can establish the other requisite elements of a prima facie case, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the allegedly discriminatory conduct.  Vasquez, 349 F.3d at 641. Defendants assert Plaintiff was not given disadvantageous assignments, but rather was given only those assignments that were part of her regular duties as a customer service representative. (Defs.' Mot. at 18; see SUF ¶ 9.)  Defendants further aver Plaintiff was never asked to do any work that was not part of her position. (Defs.' Mot. at 18; see SUF ¶ 9.)  Therefore, Defendants have satisfied their burden of articulating a legitimate non-discriminatory reason why Plaintiff received certain assignments.  See Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25 (1978) (the employer's burden is satisfied if [it] simply "explains what [it] has done").

1    Since Defendants have provided a non-discriminatory reason
2    for the assignments, the burden shifts back to Plaintiff to show that
3    the reasons are a pretext for discrimination.  <u>Vasquez</u>, 349 F.3d at
4    641.  Plaintiff does not counter Defendant's evidentiary showing with
5    any specific facts from which a reasonable inference could be drawn
6    that Defendants' proffered explanation is a pretext for
7    discrimination.  <u>See</u> <u>Berg</u>, 794 F.2d at 459 ("The party opposing
8    summary judgment . . . must set forth specific facts showing that
9    there is a genuine issue for trial.").  Therefore, Defendants' motion
10   for summary judgment on Plaintiff's Title VII race and gender
11   discrimination claims is granted.

12       C.  Retaliation Claims

13       Defendants seek summary judgment on Plaintiff's retaliation
14   claim brought under Title VII, 42 U.S.C. § 2000e-3.  (Defs.' Mot. at
15   27-29.)  Plaintiff concedes she cannot prove the damage element of her
16   retaliation claim, and states she does not oppose summary judgment
17   being entered against her on this claim.  (Pl.'s Opp'n at 1; Pl.'s
18   Proposed Order at 1-2.)  Therefore, Defendants' motion for summary
19   judgment on Plaintiff's Title VII retaliation claim is granted.

20   II.  State Law Claims

21       Since Defendants' motion for summary judgment has been
22   granted on all of Plaintiff's federal claims, the issue is reached
23   whether supplemental jurisdiction should continued being exercised
24   over Plaintiff's state claims.  Under 28 U.S.C. § 1367(c)(3), when all
25   federal claims are eliminated before trial, the court has a measure of
26   discretion when deciding whether to continue exercising supplemental
27   jurisdiction over state claims.  <u>Les Shockley Racing, Inc. v. National</u>
28   <u>Hot Rod Ass'n</u>, 884 F.2d 504, 509 (9th Cir. 1989).  "[W]hen deciding

whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, . . . the values of judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 173 (1997).  "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); Wade v. Regional Credit Assoc., 87 F.3d 1098, 1101 (9th Cir. 1996) ("Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice.").

Plaintiff argues she asserts common law racial and sexual harassment claims, and that these claims "are appropriate under California law." (Id. at 4.)  Defendants rejoin Plaintiff has not asserted common law harassment claims, and that no California court has recognized common law claims for harassment. (Defs.' Reply at 11.)  "Because the California Supreme Court has not addressed this question, . . . [this Court would have to] 'predict how the highest state court would decide the issue . . .'" Walker v. City of Lakewood, 272 F. 3d 1114, 1125 (9th Cir. 2001) (quoting Nat'l Labor Relations Bd. v. Calkins, 187 F.3d 1080, 1089 (9th Cir. 1999)). However, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  Therefore, "as a matter of comity" and to provide the parties with "a surer-footed reading of applicable law," the Court declines to

1  continue exercising supplemental jurisdiction over Plaintiff's state

2  law claims.  Plaintiff's remaining state law claims are dismissed

3  without prejudice as of the date on which this order is filed.

4         IT IS SO ORDERED.

5  Dated:  February 27, 2006

6

7                              /s/ Garland E. Burrell, Jr.
                               GARLAND E. BURRELL, JR.
8                              United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28